Lott *v,* Swezey,

---

## LOTT *vs.* SWEZEY and PRINDLE.

Where money has been collected, or received upon a judgment valid at the time and binding between the parties, and that judgment is subsequently reversed, the money may be recovered back, although the payment may not have been coerced by actual duress.

The remedies by order of restitution, or by *scire facias,* in such a case, are merely cumulative, and do not bar an action.

THIS was an appeal from a judgment entered at a special term, in favor of the plaintiff, upon a demurrer by the defendants to the complaint. The complaint alleged that on April 15, 1856, the defendants recovered a judgment against the plaintiff, in an action in the city court of Brooklyn, for $268.05. That on April 27, 1857, the plaintiff paid to the defendants the amount of said judgment. And that on an appeal to the general term of the supreme court, judgment was rendered on July 24, 1857, reversing the judgment of the city court, and ordering a new trial ; and the plaintiff demanded judgment for the sum paid by him, with interest. The de-

fendants demurred upon two grounds : 1. That there is another action pending for the same cause between the parties, as appears upon the face of the complaint; and 2. That the complaint does not state facts snfficient to constitute a cause of action.

The following opinion was delivered at the special term, upon the argument of the demurrer.

BROWN, J. " The demurrer assumes the truth of all the facts alleged in the complaint and upon which the plaintiff relies to recover. It therein appears that the present defendant prosecuted the plaintiff in the action in the city court of Brooklyn, and recovered judgment against him for the sum of $268.05, which he afterwards paid to the present defendants. He also brought an appeal from the judgment to the general term of the supreme court, where the judgment was reversed and a new trial ordered.

The right of the plaintiff to recover the money thus paid, in an action for money had and received, is quite clear, both upon principle and authority. The payment was not voluntary ; it was coercive. The judgment was the highest kind of coercion. It was a lien upon the defendant's real property which he then had or might thereafter have, and the order and direction of a competent court to pay over the money, on execution, was not wanting to give the payment a compulsory character.

The 330th section of the code gives to the appellate court, upon a reversal of a judgment, power to order restitution of all property and rights lost by the erroneous judgment. This power to redress is cumulative, and does not take away the common law rights of a successful appellant who has paid over the money upon an erroneous judgment. Besides, it may or may not be exercised by the appellate court, and unless it be exercised at the time of the reversal, it cannot be exercised after the record has been removed to the inferior court for a new trial.

The plaintiff is remediless, unless he can maintain his ac-

Lott *v.* Swezey.

tion, assuming that the action in which the money was paid is still pending in the city court of Brooklyn. I know of no process or proceeding by which the payment of this money can be brought to the notice of that court, nor do I perceive any power it has to grant redress. Its authority is limited to hearing and determining the action pending there upon the pleadings as they existed at the time the action was first tried. The payment of the money in satisfaction of the judgment by the present plaintiff, is not an offset or counter-caim. It cannot be set up as a defense, because that would be an admission of the right of the plaintiff in the action in the city court to recover against the present plaintiff, whereas the present action proceeds upon the ground that the recovery in the city court was erroneous, and that the plaintiff had no legal right to recover any thing from the defendant, the plaintiff in this action. The cases of *The Bank of the United States* v. *Bank of Washington*, (6 *Peters*, 8 ;) *Clark* v. *Pinney*, (6 *Cowen*, 297 ;) *Sturges* v. *Allis*, (10 *Wend.* 354 ;) *Chitty on Contracts*, 639, *note*, 5*th ed.*, are authorities in favor of the plaintiff's right to recover.

Judgment is given for the plaintiff upon the demurrer, with leave to the defendants to answer within twenty days, on payment of costs."

From this judgment the defendants appealed to the general term.

*W. B. Ackley*, for the appellants. I. The ground of the right to recover in this action can only be put by the plaintiff, upon the principle by which the action of " *indebitatus assumpsit*" for money had and received, at common law, was sustained ; that the defendants have money, which, " *ex æquo et bono*," or, " by ties of natural justice and equity," they ought not to retain. If the plaintiff claims that he is entitled to recover without reference to ·the rights of the parties in the original action, (which must here be taken to be undetermined,) it can only be because he has been obliged to pay by rea-

son of an erroneous judgment. But this is one of the facts constituting his cause of action, and should be alleged in the complaint. If upon this complaint the payment does not appear to have been compulsory, this ground of recovery fails.

II. There is nothing in the complaint to show that the payment therein alleged was in any legal sense compulsory. (1.) No fact, circumstance or motive is alleged as the cause or inducement of the payment. (2.) The recovery of a judgment merely does not, as matter of fact, operate as any constraint upon the defendant or his property. It is not a lien upon his real estate until it is docketed in the county clerk's office. It does not bind his goods until execution is delivered to the sheriff. The judgment is not alleged to be an order and direction of the court to pay over the money, and must be taken to be an ordinary money judgment, which is entirely inoperative until some proceedings are taken by the plaintiffs subsequently to the recovery of the judgment. (3.) It is unnecessary to consider how much or how little will suffice to give a compulsory character to the payment, when nothing besides the fact of the judgment and its payment is alleged. (4.) Only what occurred at or before the time of payment, can indicate whether it was voluntary or not. In this respect the complaint is silent.

III. The authorities are numerous, to the effect that a voluntary payment, where there is no fraud or mistake, or duress of person or goods, cannot be recovered back. (*Chase* v *Dwinal*, 7 *Greenl.* 134. *Fleetwood* v. *City of New York*, 2 *Sand.* 475. *Harmony* v. *Bingham*, 2 *Kern.* 99. *New York and Harlem R. R. Co.* v. *Marsh*, *Id.* 309.) The cases cited in the opinion delivered at the special term, and also every case therein referred to, and every case of the same nature that could be found in the digests, have been examined by the appellant's counsel, and in each the payment of the judgment was shown to be enforced either by execution and sale or by other circumstances independent of the mere recovery of judgment.

Lott *v.* Swezey.

IV. It is perfectly consistent with the complaint, that as a matter of justice and equity between the parties, the defendants are entitled to retain this money. The plaintiff nowhere claims that the money is his, or that the defendants have no right to it.

V. The difficulty suggested, as to the plaintiff's relief in the other action, in case of another judgment against him, will not, it is claimed, exist. The process of the court, by which alone the new judgment could be collected, is at all times · under the control of the court; and upon motion showing that at any previous stage of the action the sum in controversy had been actually received by the plaintiffs therein, the court would direct execution to issue only for the costs.

*Philip S. Crooke,* for the plaintiff. I. The party paying a judgment, which is subsequently reversed, may have restitution, on reversal, and may maintain an action to recover the amount paid. (*Bank of U. S.* v. *Bank of Washington,* 6 *Peters,* 8, *and cases cited.*)

II. If a judgment is reversed on error, the party shall be restored to all he has lost. (*Com. Dig. Pleader,* 2, 3, *B.* 20.)

*By the Court,* EMOTT, J. This would have been an action for money had and received, before the code abolished all forms of action, or rather their names. An action for money had and received by the defendant to the use of the plaintiff lay whenever the defendant withheld from the plaintiff money, which justly and equitably belonged to him. In the language of Lord Mansfield, in *Moses* v. *Macfarlane,* (2 *Burr.* 1009,) "it lay for money which, *ex æquo et bono,* the defendant ought to refund." In that case that distinguished judge permitted the application of the action, and of the principles upon which it proceeded, to the recovery of money which had been unjustly and unconscientiously recovered of the plaintiff in a suit in another court, while the judgment in that suit remained unreversed and in force. It is now conceded that this was going

too far. The first judgment ought to have been conclusive between the parties, and the case was one for the application of the maxim, "*interest reipublica ut sit finis litium.*" *Marriot* v. *Hampton* (7 *T. R.* 269) was decided on this ground, and this is the settled law. It will be observed that in both these cases the judgments under which the money was paid stood in force and unreversed, and the second action was an attempt to overhale the merits of a controversy once tried. The question of the voluntary or coercive character of the payment was not the turning point of the decision in either case.

There is another class of cases where the money for which the action is brought has been obtained from the plaintiff by coercion, or the use of illegal or invalid process. In these it is of the highest consequence to know whether the plaintiff submitted voluntarily to pay the money, or was compelled to do so by duress of his goods or person. Because, if the payment was made with a knowledge of the facts, voluntarily, then the rule is *volenti non fit injuria.* In cases of wrongful payment, in general, unless there be a mistake of the facts or undue advantage taken of a man's situation to extort or coerce payment, it must be final. But these again are cases in which there is no judicial action affecting the rights of the parties intermediate the payment and the action for restitution; in other words, where the demand was unfounded and the payment illegal, alike at the time of the payment and at the time of the suit. The books are full of instances of this sort—actions to recover money paid upon illegal and unconscientious demands, either upon process or without it—and the main question in such cases is, whether the payment was voluntary or compulsory. Many of the earlier cases are reviewed in *Mowatt* v. *Wright,* (1 *Wend.* 355.) See also *Hall* v. *Shultz,* 4 *John.* 240; *Fry* v. *Lockwood,* 4 *Cowen,* 454; *Waite* v. *Leggett,* 8 *Cowen,* 195; *Ripley* v. *Gelston,* 9 *John.* 200; *Silliman* v. *Wing,* 7 *Hill,* 159; *Supervisors of Onondaga* v. *Briggs,* 1 *Den.* 26. See also *Fleetwood* v. *City of New York,* (2 *Sandf. S. C. R.* 475,) in which it was held that there cannot be legal duress or compul-

Lott *v.* Swezey.

sion of property, where the property liable to be affected by the claim or process is real estate. The same principles will be found in *Corlies* v. *Waddell*, (1 *Barb. S. C. R.* 355,) and in the recent case of the *New York and Harlem Rail Road Co.* v. *Marsh*, (2 *Kern.* 308.) Suits to recover back money paid on an erroneous and subsequently reversed judgment, belong to a different class and proceed on different principles. I find three of these cases. These are *Clark* v. *Pinney*, (6 *Cowen*, 297,) and *Sturgis* v. *Allis*, (10 *Wend.* 355,) in our own courts, and *Bank of the U. S.* v. *Bank of Washington*, (6 *Peters*, 8,) in the supreme court of the United States. In the first of these cases the court say the money was collected on an erroneous judgment; this judgment having been subsequently reversed, the inference is irresistible that it belongs to the person from whom it was collected, and the only question is as to the remedy. There was an execution issued in this case, but the defendant paid it to the sheriff by a note of third parties, and it is not stated that there was an actual levy, or that the payment was compelled, that the plaintiff might get his goods. So in *Sturgis* v. *Allis* the payment was made upon an execution, but not to obtain a release of the goods. I suppose that in both these cases, if the judgments had not been reversed, but the process had been illegal or the judgments invalid for any collateral reason, the money might not have been recovered back, because it was a voluntary and not a strictly coerced payment in the eye of the law. It is not sufficient to constitute duress or coercion, that the defendant should have been armed with the means of compelling payment: the payment must have been strictly compelled. It is the duress of goods which the cases recognize, where the plaintiff submits to an unlawful exaction to obtain or reclaim his property actually seized. In the *New York and Harlem R. R. Co.* v. *Marsh*, (2 *Kern.* 308,) the defendant was a collector, armed with a warrant, and with power to seize property to pay the tax. But the plaintiffs paid him the tax, on his demand at their office, out of his jurisdiction, and were there-

fore held to have paid it voluntarily, and to have precluded themselves from contesting the rightfulness of the tax, in an action to recover it back. It is not enough, therefore, in cases where the positions and rights of the parties have not been altered since the payment, that the payment might have been coerced: it must have been actually compelled by duress of persons or goods.

As we have seen, however, the rule is not so laid down in cases of payments on erroneous and subsequently reversed judgments. The case of the *U. S. Bank* v. *Bank of Washington* illustrates this more clearly. There the payment was made upon an execution which was forwarded to the defendant by a corresponding bank, for collection. The court say that upon the reversal of this judgment, on which the execution issued, the law raises an obligation on the part of the person who has received the benefit of it, to make restitution; and the principal point discussed in the opinion of Judge Thompson there, as in that of Judge Sutherland in *Clark* v. *Pinney*, (*supra*,) is whether the only remedy is a writ or order of restitution, or a scire facias, or whether an action will lie. These cases are all of them in point to show that the remedies are cumulative, and that the action will lie. I think they also sustain the position that where money has been collected or received upon a judgment valid at the time and binding between the parties, and that judgment has been reversed subsequently, the money may be recovered back, although the payment may not have been coerced by actual duress. We ought not to say that a party must resist the judgment of a court to the last extremity, and with what is something like contumacy, if he wishes to preserve his right to restitution in case he succeeds in reversing the judgment. Where a man pays without coercion and with knowledge of the facts of his case, he cannot be heard afterward to say that upon these facts he ought not to have been called upon for payment. That is undoubtedly a settled rule of law. But that supposes that he claims restitution upon

Lott *v.* Swezey.

the same state of facts which existed when he paid the money. When however the payment is made in obedience to the judgment of a court which had determined that he must pay it, and that his adversary had the right to demand it of him, and subsequently a legal tribunal of competent authority adjudges that the first judgment was erroneous, and therefore vacates and reverses it, the conclusion is irresistible that the plaintiff in the first judgment, if he has received its amount, has received what he is equitably and justly bound to restore. The court ought not to refuse its aid to compel such restitution; and the fact that under our present practice the appellate court may direct it in reversing the judgment, (*Code*, § 330,) while it shows that the appellant need not wait for actual compulsion and duress before he obeys the judgment from which he appeals, while it is standing in force, does not take away the right of action given by the common law.

The distinction between such a case, and those where actual duress is required to be shown, is that in the latter the plaintiff has paid a demand which was wrongful at the time, and he is foreclosed from showing its wrongfulness afterwards, unless he was compelled to pay it; while here, the demand was rightful at the time, and so long as the original judgment remained unreversed. The obligation of the defendant to restore the money was created subsequently when that judgment was reversed, and it is upon that state of facts, and that too produced by judicial action, that the plaintiff's present rights depend.

The complaint in this action alleges the payment simply, but the presumption is that it was in obedience to the judgment, and not as a compromise or settlement. It then alleges the reversal of the judgment, and upon these facts the action was well brought. If the case is to be varied it must be by the answer.

The judgment must be affirmed.

[KINGS GENERAL TERM, February 14, 1859. *S. B. Strong, Emott* and *Brown*, Justices.]