THEODORE HAEBLER et al., Appellants, *v.* ELIJAH MYERS et al.,
Respondents.

The provisions of the Code of Civil Procedure (§§ 445, 1005, 1216, 1292,
1323, 2142, 2263, 3058), providing for restitution, on reversal of a judg-
ment or order, of money or property, or its proceeds, of which the
appellant has been deprived by reason of the erroneous judgment or
order, were enacted in recognition of the common-law right of resti-
tution, and to furnish additional means of enforcing that right.

The remedies prescribed, therefore, are not exclusive, and a party entitled
to restitution may obtain relief by action.

By virtue of a levy under an attachment brought by plaintiffs, the sheriff
received $900. Defendants, as subsequent lienors, moved to vacate the
attachment and procured an order restraining the sheriff from paying
over the money to plaintiffs. The motion to vacate was granted and the
sheriff thereupon paid over the money so received to defendants. Upon
appeal the order vacating the attachment was reversed and the motion
denied. Plaintiffs, pending the appeal, recovered judgment in their
attachment suit, an execution thereon was returned wholly unsatisfied
and their judgment remains unpaid. *Held,* that an action as for money
had and received was maintainable to recover the moneys so paid to
defendants; that the right of action was not affected by the fact that at
the time the money was paid over to defendants, plaintiffs had only a
lien upon it; that while the erroneous order was a protection to the
sheriff, it was not such to defendants; that they having received the
money with knowledge of the facts, and that if the order by virtue of
which they received it should be reversed, plaintiffs would be entitled
to it, a promise of restitution would be implied, running to plaintiffs,
who could enforce it without the intervention of the sheriff.

*Haebler* v. *Myers* (58 Hun, 179), reversed.

(Argued March 21, 1892; decided April 19, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made October 24, 1890, which affirmed a judgment in favor
of defendants entered upon a decision of the court on trial at
Special Term.

This was an action for money had and received.

In April, 1888, the sheriff of the city and county of New
York received the sum of $900 "by reason of" the levy of

an attachment which the plaintiffs had caused to be issued in an action brought by them against one Bernharth and others. On October thirtieth, the defendants, "as subsequent lienors," procured an order restraining the sheriff from paying over to the plaintiffs the money so received by him, and on November twenty-second, they procured another order, granted at Special Term on notice, vacating said attachment. "After said attachment was so vacated, and in consequence thereof and not otherwise, said sheriff paid over to the defendants, as subsequent lienors, said $900 which he had received under the attachment issued to him, as aforesaid, by the plaintiffs." On the 18th of April, 1889, the order vacating the attachment was affirmed by the General Term, but on October 31, 1889, the Court of Appeals reversed the orders made by the General and Special Terms and denied the motion to vacate the attachment.

November 12, 1888, the plaintiffs recovered judgment in the action brought by them against said Bernharth and others for the sum of $1,258.91, but the execution issued thereon to said sheriff was returned wholly unsatisfied and the judgment is still unpaid. The plaintiffs demanded restitution from the defendants, which was refused, and thereupon they brought this action, and after alleging the foregoing facts, in substance, asked that the defendants be ordered and decreed to make restitution to the plaintiffs of the said sum of $900, with interest thereon from the 22d day of November, 1888.

The defendants demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The Special Term, in sustaining the demurrer, held that the defendants had received nothing from the plaintiffs, which they were bound to restore to them, as the money in question belonged to Bernharth and others until it was devoted to the payment of the defendants' execution. The General Term affirmed the judgment upon the same ground, but also suggested that it was the duty of the plaintiffs to obtain a stay of proceedings, if they wished to protect their lien by a successful appeal.

*Marshall P. Stafford* for appellants.   An action for restitution always lies against a party who has obtained money by reason of an order or judgment subsequently reversed.   (*Kidd v. Curry*, 29 Hun, 215 ; *Clark* v. *Pinny*, 6 Cow. 297 ; *Sturgis* v. *Allis*, 10 Wend. 364 ; *Bank of U. S.* v. *Bank of Washington*, 6 Pet. 8 ; *Lott* v. *Swezey*, 29 Barb. 88 ; *Murray* v. *Berdell*, 98 N. Y. 480 ; *Wright* v. *Nostrand*, 100 id. 616.) One who has been wrongfully deprived of money always has an action for money had and received against one who has profited by the wrong.   (*Barhyte* v. *Shepard*, 35 N. Y. 238 ; *Swift* v. *City of P.*, 37 id. 513 ; *Bank of Commonwealth* v. *Mayor*, 43 id. 184 ; *Newman* v. *Bd. Suprs.*, 45 id. 676 ; *Peyser* v. *Mayor, etc.*, 70 id. 497 ; *Cahill* v. *Palmer*, 45 id. 479 ; *DePeyster* v. *Mali*, 92 id. 262 ; *Kingston Bank* v. *Eltinge*, 40 id. 391.)   Whoever has money, which in justice and good conscience he ought not to keep, is liable to an action for money had and received at the instance of one who ought to have had such money.   (*Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 447.)   The sheriff was not a necessary party to this action.   (*Mason* v. *Pendergast*, 120 N. Y. 539 ; *Stall* v. *Wilbur*, 77 id. 163, 164 ; *Horn* v. *Town of New Lots*, 83 id. 100; *Hathaway* v. *Town of Cincinnatus*, 62 id. 447.)   It is immaterial that the sheriff rightfully paid the money to appellants. (*Bank of Commonwealth* v. *Mayor, etc.*, 43 N. Y. 184; *Newman* v. *Bd. Suprs.*, 45 id. 687.)   The respondents were parties to the record in the proceeding which did the wrong.   (*Bank of U. S.* v. *Bank of Washington*, 6 Pet. 17.)   The action was properly brought against the respondents.   (*Bank of U. S.* v. *Bank of Washington*, 6 Pet. 8 ; *Bank of Commonwealth* v. *Mayor, etc.*, 43 N. Y. 184 ; *Newman* v. *Bd. Suprs.*, 45 id. 676 ; *Murray* v. *Berdell*, 98 id. 483.)   The reversal of the vacating order revived the attachment and left it in full force.   (*Pach* v. *Gilbert*, 124 N. Y. 612.)   The facts stated in the complaint make a good cause of action.   (*Caperton* v. *McCorkle*, 5 Gratt. 177.)

*Michael H. Cardozo* for respondents.   An action for restitution cannot be maintained under the provisions of the Code

·of Civil Procedure. (Code Civ. Pro. § 1623.) In this case, there is absolutely nothing to show that there was any privity between the plaintiffs and the defendants in the receipt of this money, and in view of the circumstances under which the defendants received this money, an action for money had and received cannot be maintained. (*Cary* v. *Curtis*, 3 How. [U. S.] 236; *Patrick* v. *Metcalf*, 37 N. Y. 332; 9 Bosw. 483; *Butterworth* v. *Gould*, 41 N. Y. 450; *Peckham* v. *Van Wagenen*, 83 id. 40; *K. Bank* v. *Eltinge*, 40 id. 391; *Roberts* v. *Ely*, 113 id. 128; *Carver* v. *Creque*, 48 N. Y. 385; 46 Barb. 507; *Garr* v. *Martin*, 20 N. Y. 306.) The attachment having been once discharged, it could not be revived, except by an application for a warrant, and consequently a new exercise of judicial discretion. (*Wood* v. *Dwight*, 7 Johns. Ch. 296; *People* v. *Bowe*, 81 N. Y. 43; *Bowman* v. *Bow*, 40 Hun, 489; *Wilson* v. *Ryder*, 13 Civ. Pro. Rep. 69; *Arnold* v. *Thomas*, 2 How. Pr. 91.)

VANN, J. Restitution was a remedy well known to the ·common law. Its object was to restore to an appellant the ·specific thing, or its equivalent, of which he had been deprived by the enforcement of the judgment against him during the ·pendency of his appeal. It was not created by statute, but was exercised by the appellate tribunal as incidental to its power to correct errors, and hence the court not only reversed the erroneous judgment but restored to the aggrieved party ·that which he had lost in consequence thereof. It was usually a part of the judgment of reversal which directed "that the defendant be restored to all things which he has lost on occasion ·of the judgment aforesaid."

A writ of restitution was thereupon issued, provided the ·amount that the appellant had lost, or paid under compulsion, appeared of record, as by the return of an execution satisfied. Otherwise process in the nature of an order to show cause was first issued, known as a *scire facias quare restitutionem habere non debet*. (Tomlin's Law Dict. title Restitution; 2 Till. Abr. ·472; Rolle Abr. 778; *Westerne* v. *Creswick*, 4 Mod. 161;

*Wilkinson's Case,* Cro. Eliz. 465 ; *Goodyere* v. *Ince,* Cro.
Jac. 246 ; *Manning's Case,* 4 Coke, 94 ; 2 Tidds. Pk. 1033 ;
1 Burrill Pk. 292.)

In this state the practice is now regulated by statute and
almost every conceivable case is provided for.   (Code Civ. Pro.
§§ 445, 1005, 1216, 1292, 1323, 2142, 2263 and 3058.)   Section
1323 seems especially adapted to the facts set forth in the
complaint, as it provides that "where a final judgment or
order is reversed or modified upon appeal, the appellate court
\* \* \*   may make or compel restitution of property, or of
a right, lost by means of the erroneous judgment or order."
This is a part of section 330 of the Code of Procedure, under
which it was held that the power conferred was cumulative
and did not take away the common-law rights of a successful
appellant.   (*Lott* v. *Swezcy,* 29 Barb. 87, 88.)   There were
earlier, though less complete statutes upon the subject.   (L.
1832, ch. 128, § 1 ; 2 R. S. 509, § 13 ; 1 R. L. 96, §§ 2 and 5.)

The statutory remedy is exercised by the entry of a judg-
ment or order in the action in which the erroneous judgment
or order was rendered or made.   We think that the remedies
provided by statute are not exclusive and that they were
enacted in recognition of the right of restitution as it existed
at common law, to furnish additional means of enforcing that
right.

We have before us an effort to procure restitution by an
independent action in the nature of *indebitatus assumpsit,*
based upon the theory that the law will imply a promise from
the conduct of the defendants and the circumstances of the
case.   It has been repeatedly held that such an action will lie
to recover back money paid on a judgment pending an appeal
which resulted in a reversal.   The subject was carefully exam-
ined in *Clark* v. *Pinney* (6 Cow. 298), where it was held that
the court would not compel the party to resort to the antiquated
remedy of *scire facias,* but would permit a recovery by a direct
action, as for money had and received.   In delivering the
opinion, Chief Justice SAVAGE said : " The general proposi-
tion is that this action lies in all cases where the defendant

has in his hands money which, *ex æquo et bono*, belongs to the plaintiff. When money is collected upon an erroneous judgment which, subsequent to the payment of the money, is reversed, the legal conclusion is irresistible that the money belongs to the person from whom it was collected." This principle was recognized by the Supreme Court of the United States in *United States Bank* v. *Bank of Washington* (6 Peters, 8), where it was declared that " on the reversal of a judgment the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost," and that he might proceed by action, *scire facias*, or order. The authorities uniformly support this position and out of many that might be cited the following are sufficient to illustrate the subject : (*Sturges* v. *Allis*, 10 Wend. 355 ; *Maghee* v. *Kellogg*, 24 id. 32 ; *Norton* v. *Coons*, 3 Den. 130 ; *Langley* v. *Warner*, 1 Sandf. 209 ; *Lott* v. *Sweezy, supra; Kidd* v. *Curry*, 29 Hun, 215 ; *Wright* v. *Nostrand*, 100 N. Y. 616 ; *Traveler's Ins. Co.* v. *Heath*, 95 Penn. 333.)

The right of the plaintiffs to recover could hardly be questioned if the money had absolutely belonged to them when it was paid by the sheriff to the defendants, but inasmuch as they only had a lien upon it and had not then completed their title, it is claimed that no action will lie for their relief. In taking this position the defendants lose sight of the fact that a lien is property in the broad sense of that word, and although it has no physical existence it exists by operation of law so effectively as to have pecuniary value, and to be capable of being bought and sold. They also ignore the proceedings that were in progress to convert the lien into a title to the fund. This makes the successful prosecution of the appeal a barren victory and enables the party in fault to retain the fruits of his own wrong.

While the erroneous order was a protection to the sheriff, who acted upon it while it was in force, it is no protection to the defendants, because it was subsequently reversed on appeal, and became, as to them, the same as if it had never been made.

When they accepted the money that was paid over in consequence of the order that they procured, they knew that if the order should be reversed and their motion denied, they would no longer be entitled to it, and could not in fairness retain it. They also knew that if, in the meantime, the plaintiffs perfected judgment and issued execution, their right to the money, if not paid over, would be complete upon a reversal of the order. As they acted with knowledge of all the facts, it would be inequitable for them to retain money received under such circumstances, and we see no reason why the law should not infer a promise of restitution the same as if the money had been collected under an execution. In either case the inference rests upon the fact that money was received by those who knew at the time that it might ultimately be decided that they were not entitled to it. But to whom did the implied promise run? Obviously to those who would have been entitled to the money upon the reversal of the order, provided it had not been paid to the defendants. It was so held in *Camerton v. McCarkle* (15 Grat. 177), which is precisely in point. The law implies the promise for the benefit of the injured party, and if the situation were the same as it was when the money was paid, repayment to the sheriff would be required, because he would be entitled to possession of the fund under the restored attachment. (*Pach v. Gilbert*, 124 N. Y. 612.) But the situation is changed, as the plaintiffs have become entitled to the money by virtue of their judgment and execution. They, and they alone, therefore, can avail themselves of the implied promise, which is plastic in character and for the benefit of whom it may concern. The law implies a promise because in equity and good conscience the defendants ought to have promised, and it will not permit them to say that they did not. It would be an anomaly to hold that the law will imply a promise in favor of one having title, but not in favor of one holding the first lien, when through the action of agencies known by the parties to be in operation and in the ordinary course of legal procedure, the lien would have ripened into a title, but for the erroneous order. The defendants pro-

cured the order and acted upon it, and thereby obtained money that did not belong to them, and, under such circumstances, the law presumes that they engaged to do what reason and justice require them to do. · They are, therefore, under an obligation to restore the money. In enforcing that obligation, the courts will not be particular to require literal restitution to the sheriff, or late sheriff, but, as the plaintiffs have now become entitled to the fund, will permit them to recover it in a direct action for money had and received. By imputation of law, the defendants received the money for the benefit of the party ultimately entitled to it, and by refusing to pay it over to that party, upon a proper demand after his rights had matured, became liable to an action for the recovery thereof. (*Mason* v. *Prendergast*, 120 N. Y. 536.)

The suggestion that the plaintiffs should have procured a stay of proceedings is not entitled to much weight, because a stay by order is not a matter of right, while a stay by undertaking upon appealing from a judgment is a matter of right, yet the omission to give an undertaking does not prevent a recovery upon a reversal of the judgment.

We think that the judgments rendered by the courts below should be reversed and the demurrer overruled, with costs in all courts, with leave to the defendants to answer over in twenty days upon payment of costs.

All concur.

Judgment reversed. _____