ETHEL MYERS, Petitioner, *v.* STANLEY MYERS, Respondent.

Domestic Relations Court of City of New York, Family Court, New York County, September 27, 1938.

*William C. Chanler, Corporation Counsel,* and *Alice Trubin, Assistant Corporation Counsel,* for the petitioner.

*David Greenberg,* for the respondent.

PANKEN, J. This matter comes before me on a motion by respondent for an order requiring the support bureau of the Family Court Division of the Domestic Relations Court of the City of New York, Borough of Manhattan, to pay over to him a sum of money which he had heretofore paid pursuant to an order made by a justice of this court, dated January 29, 1937, requiring the respondent to contribute the sum of twenty dollars weekly for the support and maintenance of his wife, the petitioner.

The facts germane to a determination of the application herein are as follows:

Prior to the order made in this court heretofore and in or about the month of September, 1935, after a trial had in the Supreme Court of the State of New York, New York county, in an action for separation by the petitioner herein against her husband, the respondent, the complaint in said action was dismissed on the merits. Some time thereafter, by petition, the petitioner herein instituted a proceeding in the Family Court Division of the Domestic Relations Court of the City of New York, praying for an order to require the respondent to make proper provision for her maintenance and support. After a trial an order, as hereinbefore set forth, was made. From that order an appeal was taken by the respondent to the Appellate Division, First Department, of the Supreme Court

of the State of New York. The order appealed from was reversed and the proceeding dismissed. (251 App. Div. 267.)

The question to be determined is twofold: (1) Who is entitled to the sum of money now on deposit and in possession of the support bureau of this court to the credit of the petitioner, and (2), is the respondent to be required to pay to his wife, pursuant to the order of January 29, 1937, an additional sum of $180, the amount that had accrued and remained unpaid prior to the reversal of the order and the dismissal of the proceeding by the Appellate Division of the Supreme Court of the State of New York?

The determination by the Appellate Division reversed the finding of the court below, and the dismissal of the proceeding instituted by the petitioner has relegated the parties to the *status quo* as established upon the dismissal of the plaintiff's complaint on the merits by the Supreme Court of the State of New York in 1935.

It is axiomatic that upon the dismissal of a proceeding by an appellate court the rights of the parties to the litigation, if any there are, are re-established as if no judgment had been rendered or order made.

In *Golde Clothes Shop* v. *Loew's Buffalo Theatres* (236 N. Y. 465) the late Judge CARDOZO, then a member of the Court of Appeals of the State of New York, said: " We are told the defendant rested upon an order of this court. The prop was insecure * * *. When the order was reversed and the proceeding dismissed, rights and duties were re-established *inter partes,* as if no order had been made." A party who has profited as a result of an erroneous application of the law may not be permitted to retain such profits. One may not profit by an erroneous determination. Upon a rectification of the error committed the benefits flowing from such error and the resulting profits are to be restored to the aggrieved party.

The petitioner before me is in a different category from one who has profited because of an erroneous application of the law affecting a property right, business transaction or contractual relationship.

While provision for the support and maintenance of a spouse, indigent or otherwise, is not denominated under the Domestic Relations Court Act (Laws of 1933, chap. 482) as alimony, the effect of an order made in the Domestic Relations Court is in no wise different from one made in the Supreme Court for alimony. The purpose of either order is to provide support and maintenance for a spouse.

Subdivision 16 of section 92 of the Domestic Relations Court Act vests this court with the power to modify or vacate any order issued by the court.

When the present application was made there no longer was any order in force.

*Krauss* v. *Krauss* (127 App. Div. 740) presented a situation not dissimilar from the instant case. The matter came to the Appellate Division on appeal from an order of the Supreme Court, Special Term, modifying a decree of divorce by striking therefrom and annulling the provisions with respect to the payment of alimony *nunc pro tunc.* The appellate court held that while Special Term of the Supreme Court is competent to amend the decree under authority reserved to it by statute, it had no power to annul a provision with respect to alimony *nunc pro tunc.* At page 744 the court said: " And as the first day of each month came the plaintiff was entitled to this award of alimony. It became presently due and payable. We are of opinion that she had a vested right thereto of which she could not be deprived by any subsequent action of the courts or of the Legislature." This court has no power to make an order which, in effect, would be the vacating of the order made on January 29, 1937, *nunc pro tunc.* The powers of this court must be found in the statute creating it. No such powers have been conferred upon the court by statute. Following the decision in *Krauss* v. *Krauss (supra),* it would seem that the Legislature would have no power to divest a spouse of the award of alimony accruing prior to a modification of the award or a dismissal of the proceeding in which the award was made.

The courts have recognized a distinction between alimony and rights accruing in a business transaction or on an ordinary contract. Mr. Justice MARTIN, now presiding justice of the Appellate Division, First Department, in his opinion in *Pincus* v. *Pincus* (211 App. Div. 128), reversed an order of the Special Term denying an application for summary restitution of counsel fee in a marital proceeding, following the authority of *Forstman* v. *Schulting* (108 N. Y. 110), and quoting therefrom as follows: " It has been the uniform practice of courts to exercise summary jurisdiction over the conduct of parties and attorneys, in actions pending in court, and enforce obedience to orders and directions made by it, in the interest of fair dealing and honesty, to protect all parties or persons whose rights have been affected by the litigation. Both parties and attorneys who, through the aid of the court, have come into possession of property or money during a litigation, which subsequent proceedings in the action show was either wrongfully acquired, or unjustly retained, may be compelled to restore it to the rightful owner by order and attachment to enforce such restoration." And also quoting from *Haebler* v. *Myers* (132 N. Y. 363): " When money is

collected upon an erroneous judgment which, subsequent to the payment of the money, is reversed, the legal conclusion is irresistible that the money belongs to the person from whom it was collected." The presiding justice further said: " There is a well-recognized distinction between alimony and counsel fee," and cited with approval *Averett* v. *Averett* (110 Misc. 584; affd., 191 App. Div. 948).

In *Pincus* v. *Pincus* (*supra*) counsel fee was paid in connection with services rendered by counsel in a proceeding involving a marital relationship. The court distinguished between the rights of counsel to fees and alimony for the support and maintenance of a spouse. In the one instance, the counsel fee was required to be restored, and in the other instance, as in *Krauss* v. *Krauss* (*supra*), it was recognized that the wife had a vested right to the alimony of which she might not be deprived by any subsequent action either of the court or the Legislature.

The late Mr. Justice Bijur said in *Averett* v. *Averett* (*supra*): " I think it may properly be said that alimony is not really the subject-matter of an action either for a separation or for a divorce. It may or may not be provided for according to the circumstances * * *. It is manifestly only an incident to the judgment which is concerned directly with the marital rights of the respective parties. In that sense I do not think that it falls within the description of section 1323 of the Code of Civil Procedure, and similar provisions as being either ' property, or of a right lost by means of the erroneous judgment or order ' which was reversed, and was therefore a proper subject for an order of judgment of restitution."

There has been no determination of the question presented to me in this court by an appellate court construing the jurisdiction of power sought to be invoked on behalf of the respondent herein. I have been unable to find any case directly in point defining the power. It is rather interesting to note that the late Mr. Justice Bijur, in the *Averett* case (*supra*), says: " While on the one hand it is strange that the question has not arisen except in the single New Hampshire case cited (*Mullin* v. *Mullin*, 60 N. H. 16), that very fact is, I think, significant of the acquiescence of the bench and bar in the conviction that alimony is not a subject of restitution."

An order of this court for the support and maintenance of a wife or a wife and children, it seems to me, is in no different category than alimony ordered *pendente lite* or after a trial in the Supreme Court of the State of New York, until reversed by an appellate court.

The order made in this court was in full force and effect. It had the validity of an order of a higher court and was in force until

reversed by the Appellate Division and the petition dismissed. As matter of law, the force of the order was not vitiated from its inception; it had been vacated by the reversal.

The relationship between the parties before me continued to be that of husband and wife. His obligation to provide for her continued upon a change of circumstances or upon her likelihood to become a public charge. The lower court erred in its finding that she had brought herself within the purview of section 137 of the Domestic Relations Court Act, which provides, in part: " After final adjudication by the Supreme Court denying alimony in a separation action, if in the opinion of the Family Court the circumstances of the parties have changed or if it is shown to the satisfaction of the Family Court that the petitioner is likely to become a public charge, the Family Court may entertain a petition for support." The language of the section is not as explicit as one would like it to be, but the intent of the Legislature undoubtedly was, when it enacted this section, that the Family Court Division of the Domestic Relations Court is not to have only the right to entertain a petition for support but the right to make an order thereon as the evidence and the proof may permit. The respondent is in no better position in this court than he would be were he in the Supreme Court of the State of New York upon a reversal of an award of alimony to his wife and a dismissal of the complaint. An order in a proceeding in this court requiring a husband to support his wife remains in full force and continues to be effective until set aside either by this court or by an appellate court.

It has been held that a plaintiff wife is not only entitled to the money paid to her as alimony during the pendency of an action but may enforce the payment of unpaid alimony accruing prior to the dismissal of the complaint by proceedings for contempt of court. In *Shepard* v. *Shepard* (99 App. Div. 308, 309) the court said: " It is claimed by the plaintiff that upon the dismissal of the complaint, answer and counterclaim, all right to alimony, either past or future, ceased, and that, therefore no authority existed in the court to make the order appealed from." It was contended in the *Shepard* case that the Special Term of the Supreme Court had no power to adjudge the husband guilty of contempt for failure to pay alimony granted *pendente lite* and to commit him to the common jail of New York county until the amount due was paid. The court, anent that, said: " These contentions are unavailing to defeat this order. So far as this alimony is concerned, for which the defendant was adjudged to be liable, it was a fixed sum, due and payable at the time the first order was made which adjudged the plaintiff in contempt * * *. As that obligation during such

period was continuous and in existence, the husband was required to discharge it by payment, and it cannot be cut down, lessened or modified save by an order of the court, where the husband has failed to discharge it, based upon any theory of its subsequent discontinuance. As it measured the obligation for that period it stood as a fixed charge against the husband, as he is required to discharge it."

The United States Supreme Court in passing upon the question of alimony and the rights of a husband and wife in relation thereto, stated in *Averett* v. *Averett* (*supra*) as follows: " As pointed out in *Wetmore* v. *Markoe* (196 U. S. 68), the right to alimony arises out of the policy of the law and is based not on contract but upon the husband's duty to support his wife and children." Quoting from *Audubon* v. *Shufeldt* (181 U. S. 575) the court continued: " ' Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. * * * Generally speaking, alimony may be altered by the court at any time, as the circumstances of the parties may require.' " Mr. Justice DAY, writing the opinion, said, referring to the opinion of Mr. Justice GRAY in the *Audubon* v. *Shufeldt* case (*supra*): " In the same opinion Mr. Justice GRAY quoted from *Barclay* v. *Barclay*, 184 Ill. 375, in which case it was adjudged that alimony could not be regarded as a debt owing from husband to wife, which might be discharged by an order in bankruptcy, whether the alimony accrued before or after the proceedings in bankruptcy."

The courts, in so far as they have passed upon the question, have universally placed the obligation of husband to support his spouse on a plane completely different from obligations arising from business transactions founded either on express or implied contracts. The fact is, that obligation is social in character and has vital sociological implications. It is incident to the marriage relationship and finds its root in more sacred ground than that of an ordinary business transaction founded on a contract or arising from a property right.

In *Wetmore* v. *Wetmore* (149 N. Y. 520) the Court of Appeals said, quoting from *Romaine* v. *Chauncey* (129 id. 566): " It was held that the awarding of alimony was not the enforcement of a debt due to the wife from her husband, but was founded upon the marital obligation of support, from which he was not relieved by the decree. Its allowance is measured by the court, and is made specific. And whilst in one sense it is the property of the wife, it is a specific sum provided for a specific purpose created by equity, having the protection of equity, and consequently will not be applied in the

payment of debts contracted by her prior to the decree." To the same effect is *Van Ness* v. *Ransom* (215 N. Y. 557). In that case the court held: " Alimony is not a personal claim in the same sense that a cause of action for slander or assault is personal. It is personal in a sense that it is a provision made by the court in favor of the wife for her maintenance and support, and cannot be diverted from that purpose. \* \* \* The alimony sued for in this action, which accrued prior to the death of the wife, was not a personal claim that died with her, but a right which survived in favor of her personal representatives. To hold otherwise would be to defeat the object of the law and seriously impair the value of the decree in the wife's favor by depriving her of the credit which she would have to obtain means of support."

I am referred to section 587 of the Civil Practice Act as authority for the order herein sought. That section provides, in part: " When a final judgment or order is reversed or modified upon appeal, the appellate court \* \* \* may make or compel restitution of property, or of a right, lost by means of the erroneous judgment or order." From this it is argued on behalf of the respondent that this court has the power to restore the right lost by the respondent by the erroneous judgment or order made in this court. That has been passed upon by the Appellate Division of this Department when it affirmed *Averett* v. *Averett* (*supra*), in which case the court expressed itself as follows: " I do not think that it falls within the description of section 1323 of the Code of Civil Procedure, and similar provisions as being either ' property, or of a right lost by means of the erroneous judgment or order ' which was reversed." (Section 587 of the Civil Practice Act follows substantially the language of section 330 of the Code of Civil Procedure.)

The Domestic Relations Court of the City of New York is a court of limited jurisdiction. Its powers are defined by chapter 482 of the Laws of 1933, as amended by chapter 362 of the Laws of 1934 and amendments thereto.

Section 58 of the act reads in part as follows: " An appeal may be taken to the Appellate Division of the Supreme Court of the appropriate judicial department by any party to the proceeding from any final order or judgment of the court, \* \* \*. In Family Court cases the appeal shall not operate as a stay of proceedings in respect to the order and no stay shall be granted, unless the appellant deposits with the clerk of the court from which the appeal is taken the sum of two hundred and fifty dollars in cash, which may be applied to the support of the petitioner during said appeal, or unless he gives sufficient surety by a written undertaking approved by a judge of the appellate court, that during the

pendency of such appeal he will pay the amount directed to be paid to the Family Court for the support of the petitioner. A failure to make such payments automatically vacates such stay. If a new trial is ordered it shall be had in the Domestic Relations Court."

The statute specifically provides that in Family Court cases an appeal shall not operate as a stay of proceedings in respect to the order, and it directs that no stay shall be granted unless the appellant deposit with the clerk the sum of $250 or give other security approved by an appellate court, which may be applied to the support of the petitioner during the pendency of the appeal.

The statute has been framed subsequent to the decisions by our courts with regard to alimony, the right to support of a wife by a husband. This is in line with the decisions. It is within the power of the State Legislature to make such laws as to it seem wise and appropriate, affecting the relationship between husband and wife, and, as has been said in *Krauss* v. *Krauss* (*supra*), even the Legislature could not divest a wife of a right to support, alimony, that had already accrued. Such an act would amount to an *ex post facto*.

The inescapable conclusion here is that the application of the respondent to direct the support bureau to return to him the money that he had paid pursuant to the order must be denied. It was not within the power of the clerk of the court to return the money without an order of this court. He is only an administrative officer. He did exactly what he should have done in the premises.

In view of the foregoing, the arrears in this case are fixed at $180. These arrears are due and owing and are to be paid by the respondent.

Settle order on five days' notice.