BERNARD REICH, Plaintiff, *v.* SAMUEL P. SPIEGEL et al., Defendants.

REPUBLIC PICTURES CORPORATION, Plaintiff, *v.* HORIZON ENTERPRISES, INC., et al., Defendants.

Supreme Court, Special Term, New York County, February 28, 1955, as amended March 12, 1955.

**226**

*Lawrence R. Gould* for Bernard Reich, plaintiff.

*Meyer H. Lavenstein* for Republic Pictures Corporation, plaintiff.

*Sidney Posner* for Sheriff of City of New York.

*Irwin Margulies* for Samuel P. Spiegel and others, defendants.

*Louis Nizer, Walter S. Beck, Lawrence R. Eno* and *Seymour M. Peyser* for United Artists Corporation, defendant.

MATTHEW M. LEVY, J. The facts submitted and the authorities cited were many. Upon analysis, I find that the motions project but one fundamental problem of law — in turn dependent upon very few salient facts, which alone are operative in the premises, and which are substantially undisputed. Let me endeavor to put the basic facts and issues simply.

In January, 1954, Horizon Enterprises, Inc., sued United Artists Corporation in this court, alleging that United was indebted to Horizon in the sum of about $90,000. United denied that any sums were due and owing to Horizon, claiming in fact that Horizon was indebted to United in about $250,000, for

which sum United counterclaimed. Horizon secured a warrant of attachment in this court (on the ground that United is a foreign corporation) and attached about $100,000 of United's funds. This sum, initially on deposit in United's general bank account, and attached by Horizon in its action as the property of United, was taken into possession by the Sheriff under the Horizon attachment, and held by the Sheriff as security with which to satisfy any judgment that it should eventually be determined Horizon was entitled to obtain against United. In May, 1954, Republic Pictures Corporation commenced an action against Horizon and others, in which judgment is asked by Republic against Horizon of about $24,000; in that action (on the ground that Horizon is a foreign corporation) Republic obtained a warrant of attachment against the property of Horizon. In June, 1954, one Reich commenced an action against one Spiegel and various of his corporations, including Horizon, to recover the sum of approximately $24,000; again (because Horizon is a foreign corporation) a warrant of attachment was procured against the property of Horizon, this time at the behest of Reich. By virtue of the respective attachments in their favor against Horizon, Republic and Reich separately levied process thereon by service of warrants upon Horizon, United and the Sheriff. Thereafter, negotiations for settlement were undertaken between Horizon and United, at the outset of which upon United's demand Horizon stipulated with United to release Horizon's attachment against United so that United might procure the return of the fund of United in the hands of the Sheriff. However, the Sheriff refused (absent a court order) to honor the stipulation; and thereupon an order dated August 26, 1954, based upon the stipulation, was procured from this court directing the Sheriff to return the fund to United. This order, entered in the action of Horizon against United, was obtained without notice to Republic or Reich, neither of whom is a party to that action. By these companion motions, the plaintiffs Republic and Reich move in the actions instituted by them to restrain the Sheriff from returning the fund to United; and the plaintiff Republic seeks to vacate the order of this court, dated August 26, 1954, heretofore referred to. (When it was evident, on the argument of the motions, that, whatever the legal merits of the applications, the full fund of $100,000 should not remain impounded in the Sheriff's possession — when the face amount of the Republic and Reich levies totaled but $48,000 [approximately] — the Sheriff [in pursuance of the suggestion by the court] agreed to and did return $44,500 of the $100,000 attached fund to United, so that the

Sheriff now holds the sum of $25,000 pursuant to the warrant in the Reich case and the sum of $30,000 pursuant to the warrant in the Republic case, which fund is subject to the court's determination of these motions.)

To obtain an attachment, a plaintiff must aver that the defendant is indebted to the plaintiff in a stated amount over and above any offsets or counterclaims known to or acknowledged by the plaintiff (Civ. Prac. Act, § 903). The plaintiffs here make much of the assertion that certain accountings between the parties showed United to be indebted to Horizon; and that by way of secret, collusive arrangements between them, United and Horizon have sought to defeat the plaintiffs' efforts to collect their claim against Horizon. The charge, meaning and effect are all denied by United. Be that as it may, the fact as to the first point is that when Horizon sued United, the latter counterclaimed for more against Horizon than the amount of Horizon's claim. Therefore, United is obliged to pay nothing to these plaintiffs if United owes nothing to Horizon, or, if, as a result of settlement negotiations between United and Horizon, United is obligated to pay nothing to Horizon — and the net result may even be a debt from Horizon to United, and not the reverse. And, as to the second point, I know of no statute or precedent authorizing a remedy such as that invoked here in aid of the plaintiffs' attachments. If, as the plaintiffs claim, their warrants reach the fund, the attachments in themselves have all the protection the plaintiffs need. If acts are done by Horizon, United or the Sheriff in violation of the legal efficacy of the plaintiffs' attachments, then each is responsible to the plaintiffs for its or his acts. And any alleged unlawful conspiracy between United and Horizon or others to defeat the attachments, while not triable on these motions, remains independently actionable. No reason appears therefore why, in these actions, the process, conduct or disposition of the action of Horizon v. United should be interfered with. What an attachment does should not be confused with a fraudulent dealing with an attached fund or debt. It seems to me that the plaintiffs now are seeking an advantage or a protection which they already have by their own contentions, if right, or cannot secure here because their contentions are wrong. Whether they are wrong or right depends upon the function and effect of the attachments — that of Horizon against United, and those of Republic and Reich against Horizon. These will now be considered.

Of course, when the attachment processes were served by the plaintiffs on United, Horizon and the Sheriff, the claim of Hori-

zon against United was thus levied upon. The plaintiffs assert more. They contend that, in addition to the chose in action which Horizon had against United, Horizon also (by virtue of its attachment against United) had an interest in the United fund which Horizon had attached, and that this interest is embraced in the attachments levied by the plaintiffs against Horizon. In reverse, United contends that only Horizon's chose in action was attached and nothing more, and that while United remains and is willing to remain under such levy and will make payment pursuant thereto if Horizon prevails in its action against United, in the interim the attached fund is not the concern of these plaintiffs, and that the fund (initially belonging to United) still does, and now by stipulation with Horizon is subject to disposition by United.

Thus stated, the issues are clarified. In determining whether the plaintiffs (Republic and Reich) are entitled to prevent the Sheriff's return to United of the fund in question, it must first be ascertained whether the warrants of attachment (of Republic and Reich) could effectively be levied upon this fund. It is not disputed that the fund itself, in the Sheriff's hands, is not the property of Horizon, but on the contrary title to that fund was at all times, and remains, in United. Obviously, under the warrants in these actions the plaintiffs cannot attach property that belongs to United. It follows that the *fund as such* was not affected by the plaintiffs' levies. It still belongs and will belong to United, until the Horizon action is disposed of; in which event, because of the attachments levied against the chose in action, United (or the Sheriff) would, if Horizon prevails, be required to pay over *pro tanto* to these plaintiffs. It therefore follows further that the plaintiffs' attachments in these actions do not reach the *property of United in the fund*. They reach, of course, the alleged debt of United to Horizon or Horizon's cause of action against United; and, if they reach anything more, it must only be the " interest ", if any, of Horizon in the attached fund.

One question is, therefore, whether the attachments of these plaintiffs (levied, as they were, upon Horizon's claim against United) also reach Horizon's attachment against United. Another question is, whether, by virtue of Horizon's attachment against United, Horizon has such an " interest " in the United fund levied upon by Horizon that this interest is itself attachable by the plaintiffs on the basis of their respective claims against Horizon. These questions are quite related in their fundamentals. Put in another way, can there be an " attachment upon an attachment "? While the thought is of no aid in

solving the problem, I cannot help but recall — when I put the matter thus — of an expression found in the early law of real property — that " an use cannot be ingendered of [upon?] an use " (*Tyrrel's Case*, 2 Dye 155 a, 155 b, Michaelmas Term, 4 & 5 Philip & Mary; *Girland* v. *Sharp*, 1 Croke 382, Easter Term, 37 Elizabeth).

It is well to be reminded at this point that attachment is an extraordinary remedy, that it permits the seizure of a defendant's property prior to an adjudication of the plaintiff's claim and a determination of the defendant's liability, that it runs counter to the fundamental common-law concept that before depriving a party of his property, opportunity for hearing should be offered (*Rowles* v. *Hoare*, 61 Barb. 266, 270–271), and that in consequence the right to make such seizure should be, and is, carefully circumscribed. " Owing to the statutory origin and harsh nature of this remedy the section in question should be construed, in accordance with the general rule applicable to statutes in derogation of the common law, strictly in favor of those against whom it may be employed " (*Penoyar* v. *Kelsey*, 150 N. Y. 77, 80).

Let us then examine the applicable statutes. Section 902 of the Civil Practice Act provides that a warrant of attachment may, in a proper case, be granted " against the property of one or more defendants ". Section 912 states that the Sheriff must execute the warrant by levying upon " the property of the defendant ". The rule is that property sought to be levied upon must belong to the defendant-debtor. (10 Carmody-Wait Cyclopedia of New York Practice [1954], p. 135.) Accordingly, unless it appears that the Sheriff holds what constitutes " property " of Horizon, it cannot be attached by the plaintiffs. Section 916 is the claimed statutory authority for the attachments levied by the plaintiffs. Referring generally to intangible property, the section in all of its provisions expressly limits a levy to a " debt ", a " cause of action " and to the " right or interest " of the defendant in the estate of a decedent or in property held by a fiduciary or in a partnership.

If, in the suit of Horizon against United there were no attachment, then there would exist merely Horizon's chose in action against United. United's fund is not a chose in action in any sense and is not part of Horizon's chose or cause of action against United. Nor did the fund represent the debt owing from United to Horizon. The attached fund was but security for the payment of the debt if one existed (*Penoyar* v. *Kelsey*, 150 N. Y. 77, 80, *supra*). If, upon the trial of the action of

Horizon against United, the latter is found to be indebted to Horizon, then by virtue of the service of the plaintiffs' warrants of attachment on United, United would be restrained as a matter of law from paying to Horizon — and would be required to pay the Sheriff to the extent of Republic's and Reich's attachments against Horizon. If the Horizon action were tried and United found to owe Horizon nothing because United sustained its counterclaim, then Horizon's cause against United is gone. Also gone is the reason for holding United's property as security under Horizon's attachment. (Civ. Prac. Act, § 7, subd. 4.) Horizon's cause against United as basis for security for payment of Horizon's debt to these plaintiffs would be gone too. The fact that there were attachments by the plaintiffs could not serve to hold United's assets for the plaintiffs' causes if and after United will have succeeded on trial against Horizon. This demonstrates that the plaintiffs' attachments here do and can reach only Horizon's cause of action and not Horizon's rights against the fund. Since the plaintiffs' warrants constitute liens only on Horizon's claim and action against United, and since United would be free of the levy upon the fund (and even upon the chose in action) if United owes Horizon nothing, the plaintiffs can have no present right to or interest in the attached fund. Horizon's levy, in my view, gave to it no more than an inchoate and contingent interest in the fund (see 5 Amer. Jur., Attachment and Garnishment [1936], p. 94).

The plaintiffs cite *Haebler* v. *Myers* (132 N. Y. 363), and there is some language in the opinion which gives credence to the plaintiffs' reliance. But, upon analysis, it is clear that the case is quite inapplicable. Using (for convenience) the names of the present litigants instead of the names of the parties involved in *Haebler* v. *Myers* (*supra*), the facts and procedures in that case were these: Horizon caused to be issued an attachment against United. The Sheriff received certain moneys from United by virtue of the levy. The plaintiffs were subsequent lienors of United. They procured an order of the court restraining the Sheriff from paying over the fund to Horizon. Later, the plaintiffs also procured an order vacating the attachment. Thereupon the Sheriff paid over to the plaintiffs, as subsequent lienors, the fund received by him on the Horizon attachment against United. On appeal, the order vacating the attachment was reversed. In the meanwhile, Horizon had recovered judgment in its favor against United, but was unable to collect thereon. Horizon demanded restitution from the plaintiffs, and, upon refusal, Horizon sued the plaintiffs to compel restitution.

The Court of Appeals held that a complaint stating the foregoing facts was impervious to demurrer. It is obvious that the facts here are not the same as in the case of *Haebler* v. *Myers* (*supra*). Nor is the court's reasoning there applicable here. The court said (pp. 369–370):

" When they [the plaintiffs in the cases at bar — Republic and Reich] accepted the money that was paid over in consequence of the order that they procured, they knew that if the order should be reversed and their motion denied, they would no longer be entitled to it, and could not in fairness retain it. They also knew that if, in the meantime, the plaintiffs [Horizon] perfected judgment [against United] and issued execution, their [Horizon's] right to the money, if not paid ,over, would be complete upon a reversal of the order. As they [the plaintiffs] acted with knowledge of all the facts, it would be inequitable for them to retain money received under such circumstances * * *. But to whom did the implied promise [to make restitution] run? Obviously to those who would have been entitled to the money upon the reversal of the order, provided it had not been paid to the defendants [the plaintiffs]. It was so held in *Camerton* v. *McCarkle* (15 Grat. 177), which is precisely in point. The law implies the promise for the benefit of the injured party, and if the situation were the same as it was when the money was paid, repayment to the sheriff would be required, because he would be entitled to possession of the fund under the restored attachment. (*Pach* v. *Gilbert*, 124 N. Y. 612.) But the situation is changed, as the plaintiffs [Horizon] have become entitled to the money by virtue of their judgment and execution. They, and they alone, therefore, can avail themselves of the implied promise, which is plastic in character and for the benefit of whom it may concern. The law implies a promise because in equity and good conscience the defendants [the plaintiffs] ought to have promised, and it will not permit them to say that they did not. It would be an anomaly to hold that the law will imply a promise in favor of one having title, but not in favor of one holding the first lien, when through the action of agencies known by the parties to be in operation and in the ordinary course of legal procedure, the lien would have ripened into a title, but for the erroneous order. The defendants [the plaintiffs] procured the order and acted upon it, and thereby obtained money that did not belong to them, and, under such circumstances, the law presumes that they engaged to do what reason and justice require them to do. They are, therefore, under an obligation to restore the money.

In enforcing that obligation, the courts will not be particular to require literal restitution to the sheriff, or late sheriff, but, as the plaintiffs [Horizon] have now become entitled to the fund, will permit them to recover it in a direct action for money had and received. By imputation of law, the defendants [the plaintiffs] received the money for the benefit of the party ultimately entitled to it, and by refusing to pay it over to that party, upon a proper demand after his rights had matured, became liable to an action for the recovery thereof. (*Mason* v. *Prendergast,* 120 N. Y. 536.)''

With these facts and holding and reasoning as a background I cannot accept as mandatory authority applicable to the instant case the dictum of the court in *Haebler* v. *Myers* (132 N. Y. 363, p. 368, *supra*), and so stoutly presented by the plaintiffs, that '' a lien is property in the broad sense of that word, and although it has no physical existence it exists by operation of law so effectively as to have pecuniary value, and to be capable of being bought and sold.'' On the contrary, I am of the view that the required strict construction of the attachment statutes prohibits the extension of the meaning of the word '' property '' to include Horizon's interest. (Cf. *Sheehy* v. *Madison Square Garden Corp.,* 266 N. Y. 44, and *Fredrick* v. *Chicago Bearing Metal Co.,* 221 App. Div. 588.) In New York, as in California, '' Numerous contingencies might arise that would prevent the [Horizon] attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate — merely a *lis pendens* notice that a right to perfect a lien exists.'' (*United States* v. *Security Trust & Sav. Bank,* 340 U. S. 47, 50.)

In sum, I hold that Horizon's interest by way of its attachment is not itself attachable — that here '' there cannot be an attachment engendered upon an attachment.'' But while I deem this view to be correct, I shall (for purposes of further consideration of the problem) not be dogmatic about it — I shall assume, *arguendo,* that, by virtue of its attachment, Horizon has gained some kind of property right, which is itself subject to attachment by the plaintiffs, as creditors of Horizon.* It does not follow, however, that the plaintiffs' warrants are necessarily efficacious to deny Horizon and United the right to deal with the fund between themselves as they may choose to do.

* The precise problem seems not to have been studied by the Law Revision Commission. (See Legis. Doc. No. 65L, '' Act, Recommendation and Study relating to the Levy of Execution Against a Debt'', 1952 Report, Recommendations and Studies, p. 355, at pp. 383–386, 394–396.)

Since concededly the plaintiffs have no claim against United, but seek to attach United's fund only through their asserted causes of action against Horizon, it necessarily follows that the plaintiffs' rights if any in the Horizon attachment are circumscribed by Horizon's rights therein. Horizon's property interest is obviously a defeasible one; it is subject to being rendered worthless upon the occurrence of a condition subsequent. Such a condition is, for example, that Horizon's claim against United is recognized to be specious, or that it is determined that United's counterclaim exceeds Horizon's claim, or that the controversy between United and Horizon is settled or that they agree to vacate the attachment or release the fund. Thus, the property that Horizon has in the attachment is subject to the happening of an event which would ordinarily terminate the attachment — were it not for the intervention by outsiders, such as the plaintiffs. It is clear that this interference by the plaintiffs can in no way effectuate in Horizon a greater interest than it already had. The interposition of the plaintiffs' claims here must fall if Horizon's property interest is extinguished. Horizon relinquished — and, of necessity, the plaintiffs *ipso facto* lost — all property rights with respect to the attachment and the fund when Horizon and United stipulated to dissolve the attachment and to release the fund. Doubtless, if that defeasance resulted from actionable conduct on the part of the parties participating therein, the plaintiffs' rights will be protected in a plenary action instituted by them for that purpose. But that does not mean that the plaintiffs in these actions by these motions may enforce those rights.

There are other issues presented (unrelated to the basic problem) but I need not pass upon them. The application of the plaintiffs to restrain the Sheriff from returning the remaining fund to United is denied, and Republic's application to vacate the order dated August 26, 1954, is likewise denied. Settle separate orders, upon notice to all the parties and to the Sheriff of the City of New York, and reciting all of the appropriate filed papers in the three actions involved.