PLUMBAGO MINING CORPORATION

v.

Dale SWEATT, et al.

STATE of Maine

v.

Dale SWEATT and Carol Sweatt.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1981.

Decided April 21, 1982.

Sewall, Mittel & Hefferan, Robert Edmond Mittel (orally), Portland, Mark G. Sullivan, Washington, D.C., for appellant Plumbago Min. Corp.

Arthur LaFrance (orally), Portland, Craig E. Turner, South Paris, for appellees Dale Sweatt, et al.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS CARTER and VIOLETTE, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

In these two appeals, this Court is presented with an issue of first impression: the appropriate disposition of property illegally seized from the defendants in a criminal prosecution (Dale and Carol Sweatt) which, in two pending civil actions, is claimed to have been stolen from its alleged rightful owner (Plumbago Mining Corporation). We hold that under the unique circumstances of these cases the Superior Court erred in ordering, on the authority of our mandate in *State v. Sweatt*, Me., 427 A.2d 940 (1981), the property returned to the defendants, and victims of the illegal search and seizure, Dale and Carol Sweatt.

On appeal, Plaintiff Plumbago alleges error in two of the Superior Court's orders entered in *State v. Sweatt* after remand from this Court. Plumbago argues that the Superior Court erred in ordering the State, through its police officers who had custody of the seized property (tourmalines), to return the property to the Sweatts. The Superior Court denied Plumbago's motion to intervene as a third party claimant or to appear as amicus curiae in the criminal case, and Plumbago assigns error to this ruling. We affirm that ruling, entered in *State v. Sweatt*, Me., 427 A.2d 940 (1981).

Plumbago also appeals from a Superior Court order entered in two cases titled *Plumbago Mining Corp. v. Dale Sweatt, et al.*, which on appeal have been consolidated as Docket No. Law–81–203. Two civil actions were commenced by plaintiff: a forcible entry and detainer action for personal property commenced pursuant to 14 M.R.S.A. § 6012 (1980) [hereinafter referred to as the FED action] and an action seeking damages and an accounting for conversion, breach of fiduciary duty, breach of contract, and violation of 14 M.R.S.A. § 3155 (1980) [hereinafter referred to as the conversion action]. Defendant Dale Sweatt has moved to dismiss the appeals. Because we find that this appeal is not moot and is within an exception to the final judgment rule, we deny defendant's motion to dismiss the appeal.

## I. PROCEDURAL HISTORY

### A. *State v. Sweatt*

On March 30, 1981, this Court held that various tourmaline gems had been illegally

seized from the defendants, Dale and Carol Sweatt. *State v. Sweatt*, Me., 427 A.2d 940 (1981). Acting upon search warrants, police officers had seized tourmalines found at the Sweatts' home, Dale Sweatt's office and bank vault, a retail store that sold the gems on consignment, and a safe which was co-owned by the Sweatts and their attorney and located in that attorney's office. On November 26, 1980, a Superior Court justice, following a hearing, ordered suppression of part of the seized property and ordered it returned to the defendants pursuant to M.R.Crim.P. 41(e).[1] He denied suppression of the remainder of the seized property. In deciding that the Superior Court had properly granted part of defendants' motion to suppress and improperly denied the remainder of the motion, the Court stated that "where the suppressed evidence is neither contraband by force of law nor stolen property nor evidence of a crime, it must be returned to the movant absent an adverse claim of ownership." *Id.* at 951. The Court expressly noted that "no third-party claim has been advanced." *Id.* The mandate of the Law Court was "Remanded for entry of an order suppressing all property seized and directing its prompt return to the movants." *Id.*

The State moved for a rehearing of the appeal on April 13, 1981, claiming that the District Attorney was left "in a state of doubt and confusion as to her responsibilities with respect to this property" since there existed pending civil claims. Counsel for the defendants submitted a letter to the court explaining the issues and opposing the State's motion. The motion was denied without an opinion on April 21, 1981.

Plumbago's participation in *State v. Sweatt* was quite limited prior to the issuance of the Court's decision since it was not a party to the criminal case. Only the defendants' counsel and the District Attorney participated in the suppression hearing. However, counsel for Plumbago did address the hearing court briefly on the question of the tourmalines' disposition should the court grant the suppression motion. The presiding justice noted that this was not a civil action and that the suppression issue was the only matter before the court; "If there are civil suits pending or contemplating attorneys would do well if they think it feasible to protect themselves as—attachment of [sic] trustee process."

After this Court's opinion and mandate were issued, Plumbago moved on April 10, 1981, to intervene as a third-party claimant or to appear as amicus curiae in the criminal case on remand. It also moved for a stay of the November 26, 1980, Superior Court order returning the seized tourmaline to the Sweatts. Both motions were denied on April 29, 1981, following the issuance of an order by a Superior Court Justice on April 27, 1981, implementing the mandate of the Law Court directing the return of the tourmalines to the Sweatts. In the criminal case, Plumbago has timely appealed from the denial of its motions to intervene and for a stay, and from the April 27, 1981 order.

## B. The Civil Cases

Plumbago's appeal focuses on the propriety of a Superior Court order issued in both civil cases on May 15, 1981. Prior to that date, the FED and conversion actions had been treated separately by the parties[2] and the courts. At the time this appeal was taken, neither case had reached the pre-trial stage, and so no decision on the merits of Plumbago's claim that Dale Sweatt stole

---

1. Maine Rule of Criminal Procedure 41(e) reads in pertinent part:

   A person aggrieved by an unlawful search and seizure may move the Superior Court in the county in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained.... If the motion is granted the property shall be restored unless otherwise subject to lawful detention ....

2. The State Police Officers, Troopers White and Ouellette, who seized the tourmalines in the *State v. Sweatt* prosecution, were named as defendants in the FED action, and defendant's former attorney, David Austin, was named as a defendant in both civil actions. These parties have not filed briefs in this appeal.

the tourmaline from the corporation has been made.

### 1. The FED Action

The FED action was commenced in District Court (Rumford) on November 20, 1980. On the same date, plaintiff also filed a motion for a temporary restraining order seeking to restrain the state troopers, who had custody of the tourmalines at that time, from releasing the gems to anyone "pending the outcome of this litigation" which motion was granted following a hearing.[3] A subsequent motion to dismiss the action filed by Sweatt was denied, the judge having found that plaintiff's pleadings were proper and sufficient and that the FED action was not in conflict with the Superior Court criminal case.

A "consent judgment" [3.5] was rendered by the District Court on January 15, 1981, which read in pertinent part that, "by agreement of counsel,"

> Defendant White and Ouellette [the state troopers who had custody of the gems] have no right, title or interest in the property in question other than as custodians. They shall retain the property in question until any pending criminal proceedings involving defendants Sweatt or Austin have terminated in the Superior Court. If this civil action is pending at that time they shall continue to hold it until the entry of any final judgment.

A complaint was entered in Superior Court, Oxford County, on February 26, 1981, pursuant to 14 M.R.S.A. § 6012.[4] On March 30, 1981, the *State v. Sweatt* opinion was issued. One month later defendants White

and Ouellette moved to vacate the November 20 order granting a temporary restraining order and to modify the January 15 judgment so that they could turn over the gems to Sweatt, as required by the April 27, 1981, order entered in *State v. Sweatt* by the Superior Court, Oxford County, without violating the orders issued in the FED action. On May 15, 1981, defendant Sweatt's motion to dissolve the temporary restraining order was granted by the Superior Court, Oxford County, which held that the Law Court mandate ordering the return of the tourmaline to the Sweatts controlled the disposition of the gems.

### 2. The Conversion Action

Plumbago commenced the conversion action in Superior Court Oxford County, on December 15, 1980, about one month after commencement of the FED action. Plaintiff moved on January 19, 1981, for approval of an attachment and trustee process "against the property of defendants Sweatt and Austin in an amount of $1,500,000." Affidavits of Dean McCrillis, the President of Plumbago, and others were submitted to show that plaintiff had a reasonable likelihood of recovering judgment and that the judgment would probably exceed the limits of defendant's liability insurance, as required by M.R.Civ.P. 4A. On April 17, 1981, a Superior Court Justice ordered that "an attachment including an attachment on trustee process, may be made against Dale Sweatt's property in the amount of $1,000,-000." A writ of attachment was issued on April 24, and on April 27 at 9:10 a. m. a Cumberland County deputy sheriff attached "a black footlocker and its contents" [here-

---

**3.** The order read:

> After hearing the arguments of counsel and reviewing the affidavits of Dean McCrillis and Robert Mittel and reviewing and remaining pleadings, it is ORDERED, ADJUDGED AND DECREED THAT, if Superior Court in Oxford County Cr. No. CR 80–291 should order the tourmaline in question suppressed and released neither Def. White or Def. Ouellette or any person acting under or for them shall take any action to release to any person, until the conclusion of this proceeding any of the tourmaline seized by the Maine State Police ... from Def. Sweatt or Austin.

**3.5** While we consider the "judgment" entered by the District Court Judge on January 15, 1981, to be an order by consent of the parties and not a final judgment and we shall accordingly treat it as such for the purpose of this opinion, we shall nonetheless refer to it as a "consent judgment" since that term clearly identifies the ruling in distinction from the numerous other orders addressed.

**4.** 14 M.R.S.A. § 6012 states: "there shall be no right of removal, except if the defendant shall claim title to said property himself."

inafter referred to as the tourmalines] which were being held by Eagle Savings and Loan Association in an account in the names of the state troopers who had seized the tourmalines. The attaching deputy sheriff, subsequently appointed Eagle Savings keeper of the gems. 14 M.R.S.A. § 4152 (1980). On April 29 the bank refused to give Sweatt the footlocker when he attempted to obtain possession pursuant to the April 27 order of the Superior Court in the criminal action.

The State of Maine moved to dissolve the writ of attachment on May 1, 1981, on the grounds that the property was deposited into the account of the two state troopers who were ordered by a Superior Court Justice on April 27 to return the evidence to the Sweatts and were prevented from doing so by the attachment. Defendant Sweatt also moved to release the attachment. On May 15, 1981, a justice of the Superior Court, Oxford County, entered an order dissolving the attachment and requiring the State to return the gems to the defendants.

### 3. Plaintiff's Appeal

Plaintiff, in *Plumbago Mining Corp. v. Dale Sweatt et al.,* is appealing from the May 15 order entered in the FED and conversion actions. This order, issued after a hearing where all parties were represented, reads as follows:[5]

It is hereby ORDERED, that

1. The mandate of the Supreme Judicial Court of March 30, 1981 be promptly carried out pursuant to the April 27, 1981 order of this Court at [State v. Sweatt] that "the State acting through its officers is hereby ordered to promptly return" all property seized in this action to Dale and Carol Sweatt;

2. The order in [the FED action] dated November 20, 1980 and January 15, 1981 entered against the State and Officers White and Ouellette insofar as it deals with the subject property is hereby dissolved and said officers are directed to proceed forthwith to enforce the mandate of the Supreme Court and this Court;

3. The attachment [in the conversion action] entered by Plaintiff Plumbago through Sheriff Fulton of Cumberland County against a footlocker and its contents in the Eagle Savings and Loan Association of Portland, Acct. 000087, is hereby dissolved, released and declared of no effect, and the State is hereby directed to proceed forthwith to retake possession of that footlocker, and Eagle Savings and Loan or the Cumberland County Sheriff is directed to turn over that footlocker and contents immediately upon demand.

4. This Order shall be the final Order of this Court [in the criminal case], implementing the mandate of the Supreme Judicial Court of March 30, 1981, and all parties—the State, the State Police, Plumbago Mining Corporation, Eagle Savings and Loan, the Cumberland County Sheriff, and any other party whatsoever is hereby enjoined from interfering in any way with that mandate—to return all property illegally seized to Dale and Carol Sweatt.

This order was issued on a Friday afternoon. The following Monday, May 18, 1981, plaintiff, in the Supreme Judicial Court, sought a stay of the order pending an appeal.

On May 19, at either 8:30 a. m. or 11:30 a. m., the Superior Court clerk docketed the notices of appeal in the two civil cases. Later that day, the state troopers, acting in compliance with the May 15 order, collected the gems and the footlocker from the keeper and delivered them to the Sweatts. On May 22, the Law Court granted plaintiff's motion for a stay of the order dissolving the attachment, temporary restraining order and consent judgment in the two civil actions. Plaintiff's subsequent motion for further relief, requesting an order directing the defendants to place the gems into custody of the state police, was denied.

### II. INTERVENTION IN THE CRIMINAL ACTION

Plaintiff argues on appeal that it should have been permitted to intervene in the

---

**5.** Plaintiff's request to the Superior Court for a stay of this order was denied.

criminal proceedings on remand in order to protect its interests in the tourmalines. These proceedings consisted of the entry of an order in accordance with the mandate of *State v. Sweatt, supra.* The court below ruled that the plaintiff had no right to intervene in a criminal proceeding.

■ Our Rules of Criminal Procedure do not provide for intervention in criminal cases. Plaintiff proposes that the standards and procedures for intervention contained in M.R.Civ.P. 24 should apply to his motion, and asserts that his motion was timely and should have been granted as of right. We disagree. Rule 24 applies to civil proceedings only.

■ We also determine that intervention is not available to one who is not a party in a criminal proceeding, such as the case here, and who claims ownership rights to seized property which is the subject of a motion for return of property and to suppress evidence under the provisions of Maine Rule of Criminal Procedure 41(e) and who has instituted civil process to establish his proprietory rights to the seized property. We do not decide the appropriateness of intervention in the absence of pending civil litigation. *But cf. United States v. LaFatch,* 565 F.2d 81 (6th Cir. 1977), *cert. denied sub nom. LaFatch v. M.M. Corp.,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978) (court implicitly permitted intervention by alleged owner in proceeding initiated by defendant to recover suppressed property, where owner had obtained civil verdict against defendant).

### III. MOOTNESS IN THE CIVIL ACTIONS

Defendant[6] argues on appeal that this case is moot because the May 15 order has been fully executed, the Sweatts now have possession of the tourmalines, and the Law Court cannot order relief under such circumstances. He further asserts that in consequence of these events, "the stay granted

by this court on May 22, 1981, could only maintain the status quo," namely, possession of the tourmalines by the Sweatts.

■ Although defendant has characterized his objection as a mootness question, his challenge is to the power of the Court to fashion a remedy. It is an established principle of equity that

> A person who has conferred a benefit upon another in compliance with a judgment, *or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside,* unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess. (emphasis added)

*Restatement of Restitution* § 74 (1937). "On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost." *Bank of the United States v. Bank of Washington,* 31 U.S. (6 Pet.) 8, 17, 8 L.Ed. 299 (1832).

■ The facts that the appeal had not been perfected and a stay had not been granted at the time the tourmalines were returned to the Sweatts do not render this appeal "moot" for lack of a remedy. In *Haebler v. Myers,* 132 N.Y. 363, 30 N.E. 963 (1892), the New York Court of Appeals was presented with a similar case. The plaintiff had obtained an attachment, which upon order of a state court was dissolved, and a sheriff returned the attached property to the defendant. The sheriff had acted while the court order was in full force. Although on appeal the court had before it a judgment on the merits in favor of plaintiff, it stated that "[i]f the situation were the same as it was when the money [the attached property] was paid [i.e., returned to the defendants], repayment to the sheriff would be required, be-

---

**6.** As Dale Sweatt was the only defendant who filed briefs and appeared at oral argument in the three actions before us, we will refer to him as "the defendant" throughout the remainder of this opinion.

cause he would be entitled to possession of the fund under the restored attachment." *Id.* at 369, 30 N.E. at 965. The court inferred a promise of restitution because the defendants, when they accepted return of the attached property, "knew ... that it might ultimately be decided that they were not entitled to it." *Id. See also Atlantic Coast Line RR v. Florida*, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935); *Silverman v. Lichtman*, 296 So.2d 495 (Fla.App.1974); *Badigan v. Badigan*, 290 N.Y.S.2d 577, 30 A.D.2d 522 (1968).

We conclude that this Court under its powers may order the tourmalines returned to the Deputy Sheriff of Cumberland County who attached the property, should equity demand that the attachment be reinstated.

## IV. APPEALABILITY

■ Defendant contends that there is no final judgment in the conversion action from which plaintiff may appeal. Defendant submits that the presiding justice merely "released" the tourmalines from the attachment and that this is a nonappealable interlocutory order. Whether or not the order "released" the tourmalines or vacated the attachment order, we find that plaintiff would suffer irreparable harm should the order stand since nothing of value remained attached. Plaintiff has lost the security for its judgment. Under these circumstances, the order "falls within the exception to the 'final judgment' rule and is immediately appealable" for the same reasons that an order denying or dissolving an attachment is appealable. *Northeast Investment Co. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 854 (1976); *Foisy v. Bishop*, Me., 232 A.2d 797, 798 (1967). We note that the fact that the property released by the May 15 order may have had a value less than the total amount authorized to be attached by plaintiff is immaterial in considering the appealability of the order. Irreparable harm is as great where the plaintiff has not attached property equal to the amount authorized ($1,000,000) as where he has attached as much as possible.

■■ Under the equitable powers granted to the District Court in 14 M.R.S.A. § 6012, the court could validly grant plaintiff's motion for a temporary restraining order. In doing so, the court was bound to follow the provisions of M.R.Civ.P. 65 governing the issuance of injunctions in the absence of any District Court rule governing the procedure for issuing an injunction. Rule 65 requires the court to fix a time for expiration of a temporary restraining order. The District Court failed to do so in this case. If the temporary restraining order did not expire prior to the issuance of the consent judgment due to the District Court's failure to specify an expiration date, it certainly did expire at the time the consent judgment was entered, on January 15, 1981. Therefore, we cannot consider plaintiff's appeal with respect to the temporary restraining order.

Defendant did not specifically challenge the finality of the consent judgment obtained in the FED action. Nevertheless, we will not consider an appeal unless the challenged order falls within a recognized exception to the final judgment rule. Where "substantial rights of a party will be irreparably lost if review is delayed until final judgment," *Moffett v. City of Portland*, Me., 400 A.2d 340, 343 n.8 (1979), an appeal is allowed even in the absence of a final judgment. Our recent ruling in *Connors v. International Harvester*, Me., 437 A.2d 880 (1981), is particularly apt in this case and causes us to find that this appeal may be considered: "We conclude that this case, where the impact of the [consent judgment] is so similar to the impact of an attachment, is another such exception to the final judgment rule, and, so far as finality of judgment is concerned, we should follow the rule we announced in *Moffett, supra.*" *Id.* at 881.

## V. VALIDITY OF THE ATTACHMENT ORDER

■ Defendant seeks to uphold the order vacating the attachment by arguing that the original motion for an attachment should not have been granted because the

accompanying affidavits supporting the motion were insufficient. Although we find that the May 15 order was not based on alleged deficiencies in the attachment, we will consider defendant's assertions.

Defendant, in his motion to "release" the attachment, alleged numerous defects in the attachment. On appeal, he has raised only three objections: 1) that plaintiff's affidavits failed to prove, as required by M.R.Civ.P. 4A, likelihood of success on the merits of the amount which plaintiff could expect to recover and failed to allege that the affiants believed their statements to be true; 2) that the property Plumbago attached was actually in the custody of the State and therefore held by the Eagle Savings and Loan in violation of 14 M.R.S.A. §§ 8103, 8111 (1980); 3) that the writ was not issued within 30 days of authorization.

Plaintiff submitted the following evidence which could have been considered by the presiding justice who granted the attachment on April 17: affidavits by the President of Plumbago stating his belief that Sweatt stole the tourmalines; affidavit indicating that Sweatt possessed some tourmaline and some "stuff" that was commonly known to be wrongfully taken tourmaline; an affidavit detailing the method by which tourmalines could have been stolen from the company by Sweatt; a search warrant; and evidence suggesting that the Newry mine tourmaline is unique and valuable. We conclude that the presiding justice's findings that plaintiff had proved a reasonable likelihood of success on the merits, that plaintiff had a reasonable possibility of recovery in the amount of $1,000,-000.00 and that each of the affidavits contained an oath by the affiant that he believed the statements made in the affidavits to be true, as required by our decision in

Northeast Investment Co. v. Leisure Living Communities, Inc., Me., 351 A.2d 845, 854 (1976), were not clearly erroneous.

■ Defendant further argues that an attachment of "State" property is a violation of 14 M.R.S.A. §§ 8103, 8111. Even if the tourmalines could be considered "State" property after they were seized, which question we do not decide herein, the statutes relied on by defendant are not applicable to this case. Section 8103[7] is not applicable because no governmental employees were sued in the conversion action, and section 8111, subsection 2,[8] merely forbids the use of attachment in *negligence* actions brought against governmental employees (i.e. troopers White and Ouellette). The complaint in the conversion action does not allege negligence and White and Ouellette were parties only in the FED action. Neither statute prohibits the attachment.

■ Under M.R.Civ.P. 4A(c), attachments "shall be made within 30 days after the order approving the writ of attachment." Defendant has challenged the timeliness of the April 24 attachment of the tourmalines. We find that plaintiff complied fully with the provisions of the rule, since the final order granting the attachment was issued on April 17, within 30 days of the making of the attachment.

## VI. APPLICATION OF THE EXCLUSIONARY RULE

■ Defendant argues in his brief that Plumbago should not receive any relief on appeal because to do so would be to allow plaintiff "to reap the fruits of the poisonous tree it planted." The president of Plumbago, Dean McCrillis, supplied most of the information leading to the issuance of the search warrant which we hold to be

---

**7.** 14 M.R.S.A. § 8103 reads in pertinent part:
1. *Immunity.* Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter.

**8.** 14 M.R.S.A. § 8111 reads in pertinent part:

2. *Attachment and trustee process.* Attachment, pursuant to Rule 4A, Maine Rules of Civil Procedure, and trustee process, pursuant to Rule 4B, Maine Rules of Civil Procedure, shall not be used in connection with the commencement of a civil action against an employee of a governmental entity based on a negligent act or omission of such employee in the course or scope of his duties.

improper in *State v. Sweatt.* Defendant contends that Plumbago has benefitted from the unconstitutional seizure because it had an opportunity to attach the tourmalines while they were held by the police, rather than at some time when defendant had control over the gems.[9]

In *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046, *reh. denied* 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976), the Supreme Court ruled that exclusion of evidence unlawfully seized by state police officers was not warranted in a federal tax collection proceeding because exclusion had not been shown "to have a sufficient likelihood of deterring the state police so that it outweighs the societal costs imposed by the exclusion." 428 U.S. at 454, 96 S.Ct. at 3032. Although this case does not involve exclusion of evidence from the civil proceedings, we find the reasoning of *Janis* to be persuasive so far as defendant's argument against reinstatement of the attachment order is concerned. If a citizen believes a theft of his or her property has occurred but knows that if the evidence is suppressed attachment will not be permitted until the property has been returned to defendant (who by that time will be fully alert to the civil claims and could take measures to thwart an attachment of specific goods), the citizen may well decide that the more prudent course is to initiate civil proceedings rather than report the crime to the police. Defendant has not argued that the police will be deterred from engaging in illegal seizures if we deny the plaintiff relief, and we agree that such a ruling will not have any effect on the police. We therefore conclude that the application of some variation of the exclusionary rule to this proceeding is not warranted.

## VII. DISSOLUTION OF THE ATTACHMENT AND CONSENT JUDGMENT

█ Plaintiff's primary contention is that the presiding justice abused his discretion in dissolving the orders relating to the consent judgment and attachment. We find, however, that there was no abuse of discretion because the presiding justice clearly was not exercising his discretion when he ordered the tourmalines returned to the Sweatts and dissolved all court orders barring such return. At the May 15 adversary hearing on defendant's motions to release the gems, the justice stated "It is really a question of a conflict between a civil order and the Supreme Court's mandate [*in State v. Sweatt*], and I think at this point it is appropriate that the mandate be carried out." Our review of the record of the hearing requires us to conclude that the presiding justice believed the order of this Court in *State v. Sweatt* was dispositive of the issues before him on May 15. Therefore, his decision was one of law rather than an exercise of discretion and must be reviewed for errors of law.

█ We did not, in *State v. Sweatt,* order the tourmaline returned to the Sweatts in contravention of civil claims which had been asserted against it. Our opinion states that "where the suppressed evidence is neither contraband by force of law nor stolen property nor evidence of a crime, it must be returned to the movant *absent an adverse claim of ownership*", and that "*no third-party claim has been advanced*". (emphasis added) 427 A.2d at 951. Plumbago was *not* a party to the suppression hearing or the appeal in *State v. Sweatt,* and therefore we could not have ruled on its claims of title to the tourmalines. In fact, we expressly ruled that other claims were not before us. The presiding justice misread our opinion and read too much into our mandate, which stated: "Remanded for entry of an order suppressing all property seized and directing its prompt return to the movants." 427 A.2d at 951.

We can find no evidence in the record suggesting that the court below gave con-

---

9. We note that attachment by its very nature confers extraordinary "benefits" on the plaintiff, and for this reason is permitted only when the moving party has satisfied the burdensome prerequisites of M.R.Civ.P. 4A. Thus, the "benefit" plaintiff acquired by the attachment and of which the defendant complains is no more than is permitted by the rule even though it may be distasteful to the defendant.

sideration to any other grounds advanced by defendant for vacating the pertinent orders, or to any of plaintiff's arguments. In the absence of such evidence, we are compelled to find that the presiding justice erred as a matter of law in ruling that he was bound by the *State v. Sweatt* decision to order the consent judgment and attachment dissolved. We vacate the May 15 order.

We now address whether or not equity demands a reinstatement of the attachment and return of the attached property to the Cumberland County Deputy Sheriff who originally attached "one black footlocker and its contents". The attachment was granted after a Superior Court justice had determined that "there [was] a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above the aggregate of any liability insurance . . . ." M.R.Civ.P. 4A(c). Plaintiff was and is entitled to the benefits of the attachment which would be available to satisfy a favorable judgment should such be obtained in the conversion action. It is only fair and equitable that the parties be returned to the status which existed immediately prior to the order vacating the attachment. We therefore order the attachment reinstated.

■ We also find that the consent judgment should not have been dissolved or vacated by the presiding justice on May 15, 1981. Consent judgments cannot be modified or vacated absent a claim of fraud or mistake by the consenting party. *Cf. Swift & Co. v. United States*, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928) (consent to a decree constitutes a waiver of legal defects in such decree); *Thompson v. Perkins*, 57 Me. 290 (1869) (party cannot appeal from final judgment to which he consented). The lower court's reliance on *State v. Sweatt* was, as we have stated, misplaced and could not support an order modifying the consent judgment in any way. The

lower court erred as a matter of law in vacating the consent judgment. We therefore order reinstated the consent judgment of January 20, 1981 entered in the FED action.

We further order defendant Dale Sweatt to return the black footlocker and its contents as of May 19, 1981, to the Deputy Sheriff of Cumberland County who had custody of the property under the attachment. Such a mandate leaves the defendant in the same legal position he was in prior to the dissolution of the attachment.

The entry is:

Motion to dismiss consolidated appeals denied.

Appeal in *State v. Sweatt*, Law–81–192 denied. Judgment affirmed.

Appeal sustained in Law–81–203, *Plumbago Mining Corp. v. Sweatt, et al.*

Remanded to Superior Court with instructions to vacate the order of May 15, 1981, to reinstate the attachment order dated April 17, 1981, and consent judgment order dated January 15, 1981; and to order defendant Dale Sweatt to return to Deputy Sheriff Stanley Fulton the property attached pursuant to the April 17, 1981 Superior Court order.

All concurring.